UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST AIRLINES CO., <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN FJORD, KATHERINE R. ARCELL, KEITH DEAN BRADT, JUDY BRAY, JOSE' M. BRITO, JAN MARIE BROWN, ROBERT D. CONWAY, JUDY CRANDALL, ROSEMARY D'AUGUSTA, BRENDA K. DAVIS, PAMELA FAUST, DON FREELAND, DONALD V. FRY, GABRIEL GARAVANIAN, HARRY GARAVANIAN, YVONNE JOCELYN GARDNER, LEE M. GENTRY, VALARIE ANN JOLLY, GAIL S. KOSACH, MICHAEL C. MALANEY, LEN MARAZZO, LISA MCCARTHY, PATRICIA ANN MEEUWSEN, L. WEST OEHMIG, JR., CYNTHIA PROSTERMAN, DEBORAH M. PULFER, DANA L. ROBINSON, ROBERT A. ROSENTHAL, BILL RUBINSOHN, SONDRA K. RUSSELL, SYLVIA N. SPARKS, JUNE STANSBURY, CLYDE D. STENSRUD, WAYNE TALEFF, GARY TALEWSKY, ANNETTE M. TIPPETTS, DIANA LYNN ULTICAN, J. MICHAEL WALKER, PAMELA S. WARD, CHRISTINE O. WHALEN, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No._____ |

**PETITION FOR MISCELLANEOUS PROCEEDING TO QUASH
OUT OF STATE SUBPOENAS AND TO OBTAIN PROTECTIVE ORDER**

Plaintiff Southwest Airlines Co. petitions this Court to allow it to respond to the Defendants' Subpoena to Testify at a Deposition in a Bankruptcy Case, and in support thereof shows the Court as follows:

1

I.   **BACKGROUND FACTS.**

   A.   **The Challenged Subpoenas Arise Out of an Antitrust Suit to Which Southwest is Not a Party.**

This Petition for Miscellaneous Proceeding to Quash Out of State Subpoenas And to Obtain Protective Order (hereinafter, the "Petition to Quash and for Protective Order") moves to quash and to obtain a protective order regarding two subpoenas served on Southwest Airlines Co. ("Southwest") by the plaintiffs in a class-action antitrust challenge to the American Airlines-US Airways merger (the "American Plaintiffs").[1]  The class-action lawsuit is pending before the United States Bankruptcy Court for the Southern District of New York, which issued the two subpoenas at issue here (the "Subpoenas") on January 8, 2014.  The Subpoenas are attached hereto as Exhibit A.  In their class-action suit, the American Plaintiffs assert a single cause of action pursuant to which they seek to enjoin the American Airlines-US Airways merger for allegedly violating Section 7 of the Clayton Antitrust Act (the "Clayton Act").  Southwest is not a party to that lawsuit and there is no claim that Southwest is involved in that merger in any way.  Joseph Alioto and several other attorneys from his firm, the Alioto Law Firm, are co-counsel of record for the American Plaintiffs.

   B.   **The Subpoenas.**

The first subpoena at issue is a subpoena duces tecum seeking three broad categories of documents from Southwest's custodian of records, to be produced by January 20, 2014 at 10:00 a.m.:

   1. "All documents referring or relating to the termination or reduction of service by Southwest Airlines which has been announced to occur in June 2014, to or from airports at Reno-Tahoe, NV, Jackson, MS, Branson, MO and Key West, FL."

---

[1] *In re AMR Corp.*, Bankr. Case No. 11-15463-SHL (Bankr. S.D.N.Y.), and *Carolyn Fjord, et al. v. AMR Corporation, et al.*, Adv. Proc. No. 13-01392-SHL (Bankr. S.D.N.Y. Aug. 6, 2013).

2

2. "All documents referring or relating to the termination or reduction of service by Southwest Airlines which has occurred or been announced to occur at Louisville, KY, Dayton, OH, San Antonio, TX, New Orleans, LA, Orlando, FL, Tampa Bay, FL, Nashville, TN, Norfolk, VA and Chicago Midway."

3. "All documents referring or relating to the termination or reduction or proposed termination or reduction of service by Southwest Airlines at any other airports following Southwest Airlines' acquisition or prospective acquisition of airport slots or gates from either US Airways or American Airlines following the merger of those two airlines."

The American Plaintiffs' second subpoena seeks to depose Southwest's corporate representative on January 23, 2014 on four topics that are nearly identical to the document requests:

1. "Southwest Airlines' decision to terminate or reduce service, commencing in June 2014, to or from airports at Reno-Tahoe, NV, Jackson, MS, Branson, MO, and Key West FL."

2. "Southwest Airlines' decision to terminate or reduce service to or from Louisville, KY, Dayton, OH, San Antonio, TX, New Orleans, LA, Orlando, FL, Tampa Bay, FL, Nashville, TN, Norfolk, VA and Chicago Midway."

3. "Southwest Airlines' decision to terminate or reduce service to or from any other airport following Southwest Airlines' acquisition or airport slots or gates from either US Airways or American Airlines following the merger of those two airlines."

4. "The authentication of the documents produced by Southwest Airlines pursuant to the documents subpoena to Southwest Airlines from plaintiffs' counsel dated January 7, 2014."

The American Plaintiffs' served the Subpoena's on Thursday, January 8, 2014.  Exhibit A.

    **C.**    **Southwest Continuously Monitors and Adjusts Flight Routes, and Periodically Publishes Any Changes to Those Routes.**

Like all major airlines, Southwest maintains a dedicated team of employees, called network planners, who monitor and evaluate dozens of data points (including operational and mechanical considerations, financial and profitability factors, and the competitive landscape) for each individual Southwest flight route.  Exhibit B at ¶¶ 2, 4 (Jamotta Aff.).  Southwest's network planners analyze and use that data to optimize each flight route's efficiency and profitability.  *Id.* at ¶ 4.  As part of that ongoing process, which Southwest treats as highly confidential and

3

proprietary, Southwest makes regular adjustments to optimize its flight schedule, increasing or decreasing the frequency of flights to various destinations. *Id.* at ¶¶ 3, 5.  After a route change is approved internally, Southwest's standard practice is to publicly announce that change to its route frequency—including any terminations and/or reductions in service to specific airports—via press release and via publication of its flight schedules. *Id.* at ¶ 6.  For example, Southwest issued a press release announcing termination of its service to Branson, Missouri, Key West, Florida, and Jackson, Mississippi on December 5, 2013.[2]  *Id.* Southwest's press releases and current flight schedules are published on Southwest's website.[3]  *Id.*  Additionally, Southwest, like all airline carriers, must file monthly air traffic reports with the U.S. Department of Transportation ("DOT").  *Id.* at ¶ 7.  These reports show, among other information, how often Southwest flies each of its routes.  *Id.*  This data is publicly available for all airlines, including Southwest, on the DOT's website.[4]  *Id.*

> **D.  The Ninth Circuit Sanctioned the American Plaintiffs' Attorney, Joseph Alioto, For His Conduct in Pursuing a Similar Antitrust Suit Challenging The Southwest-AirTran Merger.**

The lawsuit filed by the Alioto Law Firm on behalf of the American Plaintiffs is similar to one that he filed against Southwest and AirTran Airways, Inc. ("AirTran"), and that prior lawsuit against Southwest raises significant issues relating to the Subpoenas.

On September 27, 2010, Southwest and AirTran announced their proposed merger.  The Department of Justice cleared the Southwest-AirTran merger without conditions on April 26,

---

[2] Press Release, Southwest Airlines, Southwest Airlines to Cease Operations in Three Cities, (Dec. 5, 2013), available at http://swamedia.com/releases/southwest-airlines-to-cease-operations-in-three-cities.

[3] Press releases available at http://swamedia.com/releases.  Current flight schedules through June 2014 are available at http://www.southwest.com/flight/request-schedule.html?int=GSUBNAV-AIR-SCHEDULES.

[4] http://www.rita.dot.gov/bts/sites/rita.dot.gov.bts/files/subject_areas/airline_information/index.html.

2011, and the merger closed on May 2, 2011.[5] The next day, May 3, 2011, the Alioto Law Firm filed a class-action antitrust complaint on behalf of Southwest and AirTran customers (the "Southwest Plaintiffs") challenging the merger under Section 7 of the Clayton Act in the United States District Court for the Northern District of California.[6] That same day, the Alioto Law Firm also filed an application for a TRO attempting to block the already-consummated merger.[7] The following day, May 4, 2011, the district court "denied [the Southwest] Plaintiffs' request for a Temporary Restraining Order on the grounds … that 'Defendants' acquisition of [AirTran] was completed on the day before this [TRO] was filed.'"[8]

The Southwest Plaintiffs appealed the TRO decision to the Ninth Circuit on May 9, 2011, and simultaneously filed an emergency motion seeking an injunction from the appellate court to suspend the Southwest-AirTran merger pending a decision in *Malaney v. UAL Corp.*,[9] another antitrust class-action suit brought by the Alioto Law Firm that challenged the merger of United Air Lines and Continental Airlines.[10] Southwest and AirTran challenged the appellants' Emergency Motion and moved to dismiss the TRO appeal. On June 2, 2011, the Ninth Circuit

---

[5] *See* Press Release, Dep't of Justice, Statement of the Department of Justice Antitrust Division on Its Decision to Close Its Investigation of Southwest's Acquisition of AirTran, at 1 (Apr. 26, 2011) ("DOJ Press Release"), http://www.justice.gov/atr/public/press_releases/2011/270293.pdf; *Taleff v. Sw. Airlines Co.*, 828 F.Supp.2d 1118, 1121 (N.D. Cal. 2011) (noting that the Southwest-AirTran merger closed on May 2, 2011).

[6] Pl. Compl. ¶ 1, *Taleff v. Sw. Airlines Co.*, No. 3:11-cv-02179-JW (N.D. Cal. May 3, 2011) (alleging that the Southwest-AirTran merger likely would diminish competition in violation of Section 7 of the Clayton Act).

[7] Pls. Mot. for Temporary Restraining Order, *Taleff v. Sw. Airlines Co.*, No. 3:11-cv-02179-JW (N.D. Cal. May 3, 2011).

[8] *Taleff v. Sw. Airlines Co.*, 828 F.Supp.2d at 1121 (quoting Order by Judge James Ware denying Pls. Mot. for TRO at 2, *Taleff v. Sw. Airlines Co.*, No. 3:11-cv-02179-JW (N.D. Cal. May 4, 2011)).

[9] *Malaney v. UAL Corp.*, No. 3:10-CV-02858-RS, 2010 WL 3790296 (N.D. Cal. Sept. 27, 2010), *aff'd*, No. 10-17208, 2011 WL 1979870 (9th Cir. May 23, 2011) (affirming the district court's decision to deny the plaintiffs' request for injunction preventing the United-Continental merger).

[10] Notice of Appeal as to Order on Mot. for TRO, *Taleff v. Sw. Airlines Co.*, No. 3:11-cv-02179-JW (N.D. Cal. May 9, 2011); Plaintiff-Appellants' Emergency Mot. for Injunction Seeking Temporary "Hold Separate" Order Pending Disposition of Malaney, et al. v. UAL Corporation, et al., *Taleff v. Sw. Airlines Co*., No. 11-16173 (9th Cir. May 9, 2011).

issued a three-sentence order dismissing the Southwest Plaintiffs' TRO appeal for lack of jurisdiction and dismissing the Emergency Motion as moot.[11]

In addition to dismissing the Southwest Plaintiffs' improper TRO appeal and Emergency Motion, the Ninth Circuit also took the rare step of granting Southwest's motion seeking sanctions against Mr. Alioto and the Alioto Law Firm for what Southwest termed a "pattern" of "su[ing] companies that are attempting to complete high profile mergers at the most time-sensitive stage of the transaction in hopes of extracting a cash settlement."[12]  Southwest requested, and the Ninth Circuit awarded, attorneys' fees against Mr. Alioto and the Alioto Law Firm in the amount of $67,495 pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney … admitted to conduct cases in any court of the United States who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[13]

On November 30, 2011, the district court dismissed the Southwest Plaintiffs' complaint, holding that the Southwest Plaintiffs could not attempt to dissolve the merger given that they waited until May 3, 2011—*more than a week after* the Department of Justice had cleared the merger and *the day after* the merger had already closed—to challenge it.[14]  The Alioto Law Firm

---

[11] Order Before Circuit Judges Canby, Wardlaw, and Gould, *Taleff v. Sw. Airlines Co*., No. 11-16173 (9th Cir. June 2, 2011) ("Appellees' motion to dismiss this appeal for lack of jurisdiction is granted.  All pending motions are denied as moot.  DISMISSED.") (citations omitted).

[12] Defendant-Appellees' Motion for Sanctions Pursuant to 28 U.S.C. § 1927 at 1, *Taleff v. Sw. Airlines Co.*, No. 11-16173 (9th Cir. June 30, 2011); Order Granting Defendant-Appellees' Mot. for Sanctions, *Taleff v. Sw. Airlines Co.*, No. 11-16173 (9th Cir. Aug. 30, 2011), *cert. denied*, *Taleff v. Sw. Airlines Co.*, 133 S. Ct. 168 (2012).

[13] Order of Appellate Commissioner Awarding Attorneys' Fees in the Amount of $67,495.30, *Taleff v. Sw. Airlines Co.*, No. 11-16173 (9th Cir. Mar. 5, 2013); 28 U.S.C.A. § 1927 (West 2013).

[14] *Taleff v. Sw. Airlines Co.*, 828 F.Supp.2d at 1124 ("[B]ecause Plaintiffs delayed in filing their suit until after Defendants' merger had already been consummated, the remedy of divestiture is now unavailable to Plaintiffs.").

subsequently appealed that dismissal to the Ninth Circuit, where the appeal is currently pending.[15]

The improper way in which the Alioto Law Firm litigated the case against Southwest is not an isolated occurrence, nor is it confined to the past. In litigating the Southwest Plaintiffs' appeal, the Alioto Law Firm has repeatedly (and improperly) sought to supplement the factual record with documents pertaining to the American Airlines-US Airways merger, the Delta-Northwest Airlines merger, and to Southwest's schedule changes.[16] Counsel's most recent attempt to supplement the appellate record came on January 8, 2014.[17] That conduct, combined with the documents the American Plaintiffs now seek, strongly suggests that the Subpoenas are being used for the improper purpose of fishing for documents to use against Southwest, rather than for the proper purpose of obtaining discovery to be used in the case from which the Subpoenas were issued.

## II.    ARGUMENT AND AUTHORITIES.

### A.    Legal Standard.

Rule 45 of the Federal Rules of Civil Procedure, which governs a party's ability to obtain discovery from nonparties by subpoena, governs disputes over subpoenas issued in bankruptcy cases. Bankr. R. 9016 ("F[ed]. R. Civ. P. 45 applies in cases under the [Bankruptcy] Code."). Under Rule 45, a subpoena recipient must file any challenges to the subpoena in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A)-(d)(3)(B); *see also* Fed.

---

[15] Notice of Appeal as to Order on Mot. to Dismiss, *Taleff v. Sw. Airlines Co.*, No. 3:11-cv-02179-JW (N.D. Cal. Dec. 15, 2011); *Taleff v. Southwest Airlines Co.*, No. 11-17995 (9th Cir. Dec. 19, 2011).

[16] Appellants' Request for Judicial Notice, *Taleff v. Sw. Airlines Co.* at 1, No. 11-17995 (9th Cir. May 8, 2012) (requesting that the Ninth Circuit take judicial notice of news articles discussing the American Airlines-US Airways, Delta-Northwest Airlines, and Southwest-AirTran mergers); Appellants' Request for Judicial Notice, *Taleff v. Sw. Airlines Co.* at 1-2, No. 11-17995 (9th Cir. Jan. 8, 2014) (requesting that the court take judicial notice of: (1) the amended complaint filed by the Department of Justice in the American Airlines-US Airways merger; and (2) other related documents).

[17] See Note 16, *supra*, regarding Appellants' Jan. 8, 2014 Request for Judicial Notice.

R. Civ. P. 45, 2013 Amendment Advisory Comm. Note, subdivision (f) ("Under Rules 45(d)(2)(b), 45(d)(3), and 45(e)(2)(B), subpoena-related motions and applications are to be made to the court where compliance is required under Rule 45(c)."). Here, both the subpoena duces tecum and the deposition subpoena list Dallas, Texas as the place of compliance, making the Northern District of Texas the appropriate venue for Southwest to file this Petition to Quash and for Protective Order.

Under Rule 45(c)(3), Southwest, as movant, bears the burden of persuasion on this motion to quash, but the American Plaintiffs, as the party serving the Subpoenas, must demonstrate that the discovery sought is relevant. *See Thomas v. IEM, Inc.*, CIV. A. 06-886-B-M2, 2008 WL 695230 (M.D. La. Mar. 12, 2008); *Chevron Corp. v. Donziger*, No. 12–MC–80237 CRB (NC), 2013 WL 4536808, at *4 (N. D.Cal. Aug. 22, 2013) (citing *EON Corp. IP Holdings, LLC v. T–Mobile USA, Inc.*, No. 12–80082 LHK (PSG), 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012)).

### B. Southwest's Challenges to The Subpoenas.

The two Subpoenas at issue here phrase their document requests and deposition topics in almost-identical terms. Specifically, the subpoena duces tecum seeks:

- "all documents referring or relating to the termination or reduction of service by Southwest Airlines *which has been announced to occur*" at 13 airports around the United States;[18] and

- "all documents referring or relating to *the termination or reduction or proposed termination or reduction of service* by Southwest Airlines at any other airports following Southwest Airlines' *acquisition or prospective acquisition* of airport slots or gates from either US Airways or American Airlines following the merger of those two airlines."[19]

---

[18] Subpoena duces tecum at 2 ¶¶ 1-2 (emphasis added). The 13 airports are Key West, FL, Branson, MO, Jackson, MS, Reno-Tahoe, NV, Louisville, KY, Dayton, OH, San Antonio, TX, New Orleans, LA, Orlando, FL, Tampa Bay, FL, Nashville, TN, Norfolk, VA and Chicago Midway, IL.

[19] *Id.* at ¶ 3 (emphasis added).

8

Similarly, the deposition subpoena seeks testimony regarding:

- Southwest's "decision to terminate or reduce service to or from" the same 13 airports described in the subpoena duces tecum;[20]

- Southwest's "decision to terminate or reduce service to or from any other airport following Southwest Airlines' acquisition or airport slots or gates from either US Airways or American Airlines following the merger of those two airlines";[21] and

- "The authentication of the documents produced by Southwest Airlines pursuant to the [subpoena duces tecum]."[22]

Read together, the Subpoenas seek two distinct categories of information from Southwest—"Public Information" and "Proprietary and Internal Information":

- *Public Information*: Changes to Southwest's flight schedule (including any increases, decreases, additions or terminations in service to any domestic market) that have already been publicly announced; and

- *Proprietary and Internal Information*: Southwest's proprietary and confidential evaluation and analysis pertaining to actual, prospective, and/or potential schedule changes (including but not limited to changes that have already been publicly announced and any proposed or pending schedule changes that have not been publicly announced).

Southwest objects to producing either of these two categories of information, but for different reasons. *First*, the *Public Information* is limited to a relatively narrow set of documents that are publicly available, and Southwest neither contests the relevancy of those documents nor asserts that producing them would be unduly burdensome or would reveal proprietary and confidential information. However, all of Southwest's finalized, announced schedule changes are publicly available from at least two alternate sources (the DOT's website and the Southwest website). For that reason, which is explained in greater detail below, the American Plaintiffs cannot justify subpoenaing Southwest for those documents. Further, because Southwest's publicly-announced schedule changes are available in documentary form, there is no need for the

---

[20] Subpoena ad testificandum at 2 ¶¶ 1-2.

[21] *Id.* at 2 ¶ 3.

[22] *Id.* at 2 ¶ 4.

9

American Plaintiffs to depose Southwest's corporate representative on that subject. Thus, Southwest contests the Subpoenas with respect to the Public Information under Rule 26(b), which requires courts to limit discovery if the subpoenaed information either is available from an alternate, less-expensive and more convenient source or is available through other discovery channels. Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery … if … (i) the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action".).

*Second*, the *Proprietary and Internal Information*—which would encompass "all documents" and corporate representative testimony regarding Southwest's proprietary and confidential route planning models and internal route-planning and strategic discussions—is objectionable because it is irrelevant to the American Airlines-US Airways merger, would be burdensome to produce, and would require production of Southwest's confidential, proprietary information in a suit involving its direct competitors. Furthermore, the Subpoenas are harassing and, in light of the Alioto Law Firm's history of sanctions and ongoing litigation against Southwest, likely are motivated by an improper purpose. Each of these objections is grounds for granting Southwest's Petition to Quash and for Protective Order. *See* Fed. R. Civ. P. 45(b)(1) (improper service), 45(c)(3)(B) (Court may quash any subpoena requiring disclosure of "a trade secret or other confidential research, development, or commercial information."), and 45(d)(3)(iii)-(d)(3)(iv) (Court must quash subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden."); Fed. R. Civ. P. 26(c)(1)(A) ("The court may, for good cause, issue an order to protect a … person from annoyance,

embarrassment, oppression, or undue burden or expense, including … forbidding the disclosure or discovery[.]"). This Petition addresses each of these grounds in detail below.

### 1. The Public Information Sought by The Subpoenas Is Available From Alternate, Less-Burdensome And Less-Expensive Sources.

The rules of procedure do not require Southwest—a non-party—to produce information that is already available from an alternate source or through alternate discovery channels. In fact, courts must limit discovery of relevant evidence "if … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 86 (D.D.C. 2010) ("[D]iscovery of relevant evidence will be prohibited if … the evidence is unreasonably cumulative or duplicative [or] [t]he evidence can be obtained from some other source that is more convenient, less burdensome, or less expensive."). Courts give special consideration to subpoena recipients where, as in the instant case, a party seeks discovery from a non-party. *In re Subpoena to Goldberg*, 693 F. Supp. 2d at 88 ("It must also be recalled that a more demanding weighing of [the Rule 26] factors is imperative when the burden is sought to be imposed upon a third party.") (citing *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994); *Premier Election Solutions, Inc. v. Systest Labs Inc.*, No. 09-CV-1822, 2009 WL 3075597, at *3 (D.Colo. Sept. 22, 2009); *In re: Motion to Compel Compliance with Subpoena Direct[ed] to Dep't of Veterans Affairs*, 257 F.R.D. 12, 18 (D.D.C. 2009)).

Here, although the fact that Southwest *has actually increased or decreased the frequency of flights* and/or *has actually added or terminated service* to certain airports may be relevant to the American Plaintiffs' analysis of the airline industry's competitiveness, documents evidencing Southwest's announced route changes are already publicly available from at least two sources,

free of charge: the DOT's website and the Southwest website. Further, Southwest is not a party to the lawsuit underlying the Subpoenas. Given these facts, the Public Information clearly "can be obtained from some other source that is more convenient, less burdensome, or less expensive" than via non-party discovery, and the Court should deny the Subpoenas' requests for that information. Fed. R. Civ. P. 26(b)(2)(C)(i); *see Topolewski v. Quorum Health Res.*, LLC, 3:10-1220, 2013 WL 99843 at *4 (M.D. Tenn. Jan. 8, 2013) (denying plaintiff's motion to compel production of publicly-available information from a non-party pursuant to a subpoena duces tecum because "if the information is publicly available, the Court is required to limit its discovery from [a non-party].") (citing Fed. R. Civ. P. 26(b)(2)(C)(i)).

Additionally, the Court should deny discovery as to the Public Information sought by the deposition subpoena because such testimony would be "unreasonably cumulative or duplicative" under Rule 26(b)(2)(C)(i). The complete universe of the Public Information is readily available to the American Plaintiffs in documentary form. Thus, requiring Southwest's corporate representative to testify as to that information would be unreasonably duplicative. Because the Public Information is already readily available from other sources and testimony as to that information would be duplicative, the Court should grant Southwest's Petition for Miscellaneous Proceeding to Quash Out of State Subpoenas and to Obtain Protective Order with respect to the Public Information.

### 2. The Subpoenas Are Overbroad and Seek Information That is Irrelevant to The American Plaintiffs' Antitrust Lawsuit.

The scope of discovery from a non-party via a Rule 45 subpoena is the same as discovery from an opposing party under Rule 26(b). Fed. R. Civ. P. 45, Advisory Comm. Note (1970) ("the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules"); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within

12

the scope of Rule 26(b)."). Under Rule 26(b), a party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information is information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* *However*, the rules do not require Southwest to produce irrelevant information pursuant to an overly-broad subpoena. Fed. R. Civ. P. 26(b)(1); *see also Thomas v. IEM, Inc.*, CIV. A. 06-886-B-M2, 2008 WL 695230 (M.D. La. Mar. 12, 2008) (quashing subpoena duces tecum because it was overbroad and sought irrelevant information).

Here, while Southwest's Public Information may be relevant to the American Plaintiffs' claim that the American Airlines-US Airways merger will result in decreased competition, there is no indication that Southwest's Proprietary and Internal Information (*i.e.*, Southwest's internal optimization processes and discussions about both previously-announced service changes and about any future or proposed route changes) is relevant to their claim. Southwest is not a party in the American Plaintiffs' suit, and there has been no suggestion that Southwest has been involved in any way in that merger. Consequently, the American Plaintiffs' requests for information about Southwest's internal decision-making and optimization processes (including information about any "proposed termination or reduction of service by Southwest") are irrelevant and facially overbroad, and thus fall outside the scope of permissible discovery under Fed. R. Civ. P. 26(b)(1). *Thomas v. IEM, Inc.*, 2008 WL 695230 at *2-*3 (holding that a subpoena duces tecum was overly broad where it failed to narrow its scope to information relevant to the claims and defenses in the lawsuit); *see also In re O'Hare*, MISC. H-11-0539, 2012 WL 1377891 at *2-*3 (S.D. Tex. Apr. 19, 2012) (quashing three non-party subpoenas because the requests, which sought "any and all documents" provided to the subpoena recipients by the parties in the underlying litigation and which related to the parties or claims in that

litigation, were overbroad). For these reasons, the Court should grant Southwest's Petition for Miscellaneous Proceeding to Quash Out of State Subpoenas and to Obtain Protective Order as to the Proprietary and Internal Information.

### 3.     The Subpoenas Are Unduly Burdensome.

Courts must quash (or alternatively, modify) any subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Rule 45(d) also requires that any "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 26(c) provides similar protections from unduly burdensome discovery, permitting courts to "issue an order to protect a… person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1)(A).

In the Fifth Circuit, courts consider multiple factors to determine if a subpoena imposes an undue burden under Rule 45(d) and Rule 26(c): "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Pet. Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party. A court may find that a subpoena presents an undue burden when [it] is facially overbroad." *Id.*

Here, the majority of the *Wiwa* factors weigh in favor of quashing the Subpoenas. *First*, as detailed in the preceding subsection, most of the Proprietary and Internal Information sought by the American Plaintiffs is irrelevant to their suit against American Airlines and US Airways. *Second*, to the extent the subpoenas do seek relevant information (*i.e.*, the Public Information), that information has been and will be readily available to the American Plaintiffs from free,

public sources; the American Plaintiffs do not need to go through Southwest to obtain it. *Third*, the subpoena requests are broad, seeking "all documents" relating to Southwest's decisions to reduce or terminate service—including internal discussions and those decisions that have merely been "proposed" internally—to any market. Given that Southwest's network planners conduct ongoing, daily analysis of dozens of data points for each market as part of a complex route-planning process, and the fact that proposed route-planning changes must then undergo a lengthy internal approval process, producing all documents pertaining to those decisions would be voluminous and burdensome. Indeed, to produce documents relating to the internal deliberation process would, in effect, require Southwest to produce every email, every piece of paper, every presentation, and every file prepared on a daily basis by its network planners.

*Fourth*, the American Plaintiffs have not limited the time period covered by their subpoena requests. *And fifth*, the American Plaintiffs' overbroad subpoenas impose an undue burden on Southwest because they would require Southwest, a non-party and a competitor of the defendants in the American Plaintiffs' suit, to produce and its representative to testify about highly confidential and complex business intelligence (*i.e.*, Southwest's route-optimization and planning process). Because the American Plaintiffs' overbroad and largely irrelevant subpoena requests would place an undue burden on Southwest, a non-party to the underlying litigation, the Court should quash both subpoenas.

        **4.**        **The Subpoenas Seek Confidential And Proprietary Information**.

Under Rule 45(d)(3)(A)(iii), courts must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Furthermore, courts have discretion under Rule 45(d)(3)(B)(i) to quash any subpoena that "requires disclosing a trade secret or other confidential research, development, or commercial information." Any Proprietary and Internal Information is confidential, proprietary business intelligence and should be

protected from disclosure—particularly to litigation involving Southwest's direct competitors. *See* Exhibit B at ¶ 5; *see e.g.*, *In re Stewart Title Co.*, H-09-247, 2009 WL 1708079 (S.D. Tex. June 17, 2009) (granting motion to quash subpoena on grounds that it sought confidential and proprietary software from a non-party, who would be entrusting the confidentiality of its documents to parties who do not represent its interests); *In re Vitamins Antitrust Litig.*, 267 F. Supp. 2d 738, 741–742 (S.D. Ohio 2003) (where direct competitor sought confidential information from non-party, this fact weighed against discovery).

### 5. The Subpoenas Are Harassing And Improperly Seek Information That Could be Used in The Alioto Law Firm's Lawsuit Against Southwest.

Subpoena requests that are primarily motivated by harassment or for a purpose that is otherwise irrelevant to the underlying litigation are improper, and should be quashed and/or nullified via a protective order. *See* Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a … person from annoyance, … [or] oppression"); Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty …."); *see also Bentley v. LCM Corp.*, CIV.A. 08-1017, 2009 WL 2600093 at *4-*5 (W.D. La. Aug. 21, 2009) (granting non-party's motion to quash and motion for protective order because the subpoena was "issued for improper purposes: to annoy and harass [the non-party subpoena recipient]").

For example, in *Bentley v. LCM Corp.*, the plaintiff in a federal lawsuit, Richard Bentley, served a subpoena on a non-party who had been counsel of record for Bentley's opponent in a prior, related case. 2009 WL 2600093 at *1-*2. The subpoena recipient moved to quash the subpoena and moved for a protective order on grounds that the subpoena was harassing and had

been served for an improper purpose. *Id.* at *1, *3 ("In support of his motion for a protective order and sanctions, [the non-party subpoena recipient] argued Bentley has engaged in a repeated pattern of harassment against him[.]"). The district court agreed, noting that the plaintiff had been sanctioned for his conduct in prior, related litigation involving the non-party attorney:

> [According to the state court which sanctioned Bentley,] "Mr. Bentley took extraordinary and outrageous methods and tactics to try to badger, annoy, harass and overwhelm his opponents at every turn." *The venue has changed, but all indications to date in the present litigation are that Bentley's methods and tactics, unfortunately with the apparent consent and approval of his attorney,* [. . .] *have not*. The court warned Bentley and [his counsel] that these types of litigation tactics will not be tolerated, and in an effort to curb future abusive litigation, finds good cause to enter a protective order under Rule 26(c). . . prohibiting any further discovery by Bentley from third-parties. . . without prior court approval. *The court also finds the subpoena was unreasonable, as it was issued for improper purposes: to annoy and harass* [*the non-party subpoena recipient.*]

*Id.* at *5 (emphasis added).

A similarly suspicious set of circumstances and history of improper conduct exists in the instant case.[23] It is highly likely that the Subpoenas are (1) being used to harass Southwest, and (2) to fish for information that could be used against Southwest in the Southwest Plaintiffs' pending Ninth Circuit appeal. The American Plaintiffs' conduct in serving Southwest with the Subpoenas is particularly suspect for two reasons. *First*, the Alioto Law Firm, like the plaintiff in *Bentley v. LCM Corp.*, has a history of sanctions in related litigation: the Ninth Circuit sanctioned the Alioto Law Firm in 2011 for conducting unreasonable and vexatious litigation against Southwest in connection with a similar challenge to an announced (and Department of Justice-approved) merger. *Second*, during the pendency of the Southwest Plaintiffs' appeal

---

[23] In addition to the Subpoenas, the American Plaintiffs have also served a subpoena to Herbert Kelleher, Southwest's former CEO and former Chairman of the Board. Mr. Kelleher resigned as CEO in 2001 and as Chairman of the Board in 2008, years before the merger being challenged in the lawsuit from which the subpoena was served. Exhibit B at ¶ 8. Thus, Mr. Kelleher has no knowledge of Southwest's Proprietary and Internal Information, and has no role in analyzing, evaluating, or approving changes based on the Proprietary and Internal Information. *Id.* The issuance of a subpoena to Southwest's retired CEO and retired Chairman further evidences the improper purpose of the discovery being sought by the American Plaintiffs.

17

before the Ninth Circuit, the Alioto Law Firm has repeatedly attempted to supplement the record with new evidence – including documents relating to litigation over the American Airlines-US Airways merger. It is therefore very likely that the Subpoenas are being used for an improper purpose (*i.e.*, harassment) and/or being used to obtain information that, though irrelevant to the American Plaintiffs' lawsuit, could be used against Southwest in the pending Ninth Circuit appeal. For these reasons, the Court should grant Southwest's Petition to Quash and for Protective Order.

### 6. The Testimonial Subpoena Was Not Properly Served.

The American Plaintiffs did not properly serve Southwest with the deposition subpoena because they failed to tender the witness and mileage fees prescribed by Rule 45(b)(1) along with the subpoena. Fed. R. Civ. P. 45(b)(1) ("Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law."); *see also In re Dennis*, 330 F.3d 696, 704-05 (5th Cir. 2003) ("[P]roper service requires not only personal delivery of the subpoena, but also tendering of the witness fee and a reasonable mileage allowance. 'The plain meaning of Rule 45[(b)(1)] requires simultaneous tendering of witness fees and the reasonably estimated mileage allowed by law with service of the subpoena.' … Accordingly, the subpoena was not properly served.") (quoting *CF&I Steel Corp. v. Mitsui & Co. (U.S.A.)*, 713 F.2d 494, 496 (9th Cir.1983)). Improper service is grounds to quash a deposition subpoena. *Id.* at 705 (affirming lower court's decision to quash a deposition subpoena because it did not come with a reasonable mileage allowance). Because the American Plaintiffs failed to tender the required fees, the Court should quash the subpoena for testimony of Southwest's corporate representative.

### III. CONCLUSION.

For all these reasons, Southwest respectfully requests that the Court quash the Subpoenas, and/or enter a Protective Order protecting Southwest from having to respond to the Subpoenas.

DATED:  January 17, 2014                    Respectfully submitted,

/s/ Eric W. Pinker, P.C.
Eric W. Pinker, P.C.
State Bar No. 16016550
epinker@lynnllp.com
Kent D. Krabill
State Bar No. 24060115
kkrabill@lynnllp.com
Murre Martindale
State Bar No. 24083446
**LYNN TILLOTSON PINKER & COX, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas  75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEYS FOR DEFENDANT
SOUTHWEST AIRLINES CO.**

**CERTIFICATE OF CONFERNCE**

I certify that I contacted opposing counsel via phone on Wednesday, January 15th, and via email on Friday, January 17th, in an effort to resolve the issues contained in this motion without the necessity of Court intervention.  As of the filing of this Motion, there has been no resolution of the issues presented in this motion.

/s/ Eric W. Pinker, P.C.
Eric W. Pinker, P.C.

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of this document has been served on Defendants' counsel, as indicated below, on the 17th day of January, 2014:

**VIA FACSIMILE (732) 332-9301 AND REGULAR MAIL**
Gil D. Messina
Messina Law Firm, P.C.
961 Holmdel Rd.
Holmdel, NJ  07733

/s/ Eric W. Pinker, P.C.
Eric W. Pinker, P.C.

19